UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KELLY L. PINKNEY**,                                                    Case No. 1:11 CV 253

       Plaintiff,                                                          Judge James Gwin

  v.

                                           REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY,**

       Defendant.                                                       Magistrate Judge James R. Knepp II

## INTRODUCTION

Plaintiff Kelly Pinkney seeks judicial review of Defendant the Commissioner of Social Security's decision to terminate her disability insurance benefits. The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## BACKGROUND

**Disability Review**

In August 1999, Defendant found Plaintiff was disabled due to mental retardation and an inability to cope with stress precluding her from performing substantial gainful activity. (Tr. 12). In 2004, Plaintiff's condition was reviewed as part of a continuing disability evaluation. (Tr. 35–37). Plaintiff alleged she was still mentally retarded, unable to adequately deal with other people, and hearing impaired in one ear. (Tr. 36). As part of the review process, Dr. Donald Leventhal, Ph.D., performed a consultative psychological examination of Plaintiff in March 2004. (Tr. 163–68). Plaintiff told Dr. Levanthal her health problems were she did not know how to read and that she

heard voices. (Tr. 164–65). Dr. Levanthal observed Plaintiff was responsive to his questions and could sustain a conversation (Tr. 165), but her memory, concentration, abstraction, mental computation, and fund of knowledge were greatly impaired (Tr. 166).

It was Dr. Levanthal's opinion that Plaintiff was markedly impaired in several areas: in her ability to relate to others; to understand, remember, and follow instructions; to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks; and her ability to withstand stress and pressure associated with day-to-day activities. (Tr. 168). He therefore diagnosed Plaintiff with mild mental retardation and dysthymia. (*Id.*).

Shortly after Dr. Levanthal's evaluation, Plaintiff's case was referred to the Cooperative Disability Investigations Unit ("CDIU") because of questionable information in her claim application, raising suspicions of fraud. (Tr. 74). An investigation ensued and included an interview of Plaintiff by a CDIU officer. (Tr. 74). The CDIU's investigation revealed that although Plaintiff told Dr. Levnthal she could not read, Plaintiff nonetheless filled out forms on behalf of her sister seeking disability benefits. (Tr. 74, 101). Plaintiff also requested she be the payee of benefits for her sister. (Tr. 101). The CDIU also found it suspicious that Plaintiff had not received any psychiatric treatment since receiving disability benefits for a mental impairment. (Tr. 101–02).

In August 2004, Dr. Douglas Pawlarczyk, Ph.D., a state agency reviewing psychologist, assessed Plaintiff's condition. (Tr. 169–84). Dr. Pawlarczyk noted that although Plaintiff contended she could not read, she was able to fill out the forms for her sister's disability claim. (Tr. 171). He also noted Plaintiff, contrary to her contentions, did not appear to be hearing voices. (*Id.*). Dr. Pawlarcyzk further noted Plaintiff could take care of her children and was able to go to the store. (*Id.*). He therefore concluded Plaintiff was not credible and could perform "work that is simple and

2

routine and involves one and two step tasks." (*Id.*). Shortly thereafter, in September 2004, Defendant determined Plaintiff was no longer disabled and Plaintiff's benefits were terminated. (Tr. 37).

In November 2004, Plaintiff's condition was evaluated by Dr. Rod Coffman, Ph.D., another state agency reviewing psychologist. (Tr. 185–201). Dr. Coffman determined Plaintiff had a number of mild restrictions, including in activities of daily living and social functioning, and moderate difficulties in maintaining concentration, persistence and pace. (Tr. 195). He noted Plaintiff never sought out treatment for the hearing problems and auditory delusions she alleged to suffer from, did not have problems interacting with others, and was able to raise seven children and maintain a household. (Tr. 201). Dr. Coffman did note Plaintiff had "some limitations due to her low IQ", but nonetheless concluded Plaintiff was "capable of performing unskilled low stress work that does not require production and [has] limited contact with the public." (Tr. 201).

**Administrative Hearing**

After Plaintiff's benefits were terminated, she requested an administrative hearing before an ALJ. At the time of the hearing, Plaintiff was 28 years old and represented by counsel. (Tr. 234). Plaintiff testified she attended school through the ninth grade and was able to read and write. (Tr. 233–34). She also testified her daily activities included taking care of her seven children, all of whom live with her (Tr. 146, 233), including cooking them meals, doing other housework, and watching television. (Tr. 241–42).

Dr. Kathleen O'Brien, an independent medical expert, also testified at the hearing. The ALJ asked Dr. O'Brien if she believed Plaintiff met the criteria under Listings 12.05C or 12.05D (which was, and still is, Plaintiff's theory of the case). Dr. O'Brien did not. (Tr. 241–42). Based on her

review of Plaintiff's record, Dr. O'Brien opined that while Plaintiff's low IQ scores indicated she functioned in the mildly mentally retarded range, she was "able to care for a large number of children" and "doesn't appear to have any problems being around people." (Tr. 238). Dr. O'Brien also testified that because Plaintiff "has absolutely no history of any kind of mental health treatment . . . has never been seen by any kind of treatment provider, [or] given any kind of diagnosis by a treatment provider", then there simply was "no objective medical evidence that she suffers from a mental related disorder." (Tr. 241). Dr. O'Brien believed Plaintiff could perform "simple, routine types of tasks." (Tr. 238).

A Vocational Expert ("VE") also testified at the hearing. (Tr. 243–45). The VE testified that a hypothetical individual with Plaintiff's educational background and capable of performing simple, unskilled work, could perform a number of jobs in the regional economy, including: janitor (19,000); host or greeter (600); housekeeper (5,500); hand packaging (8,000); eye glass assembly (400); circuit assembly (2,500).

### The ALJ's Decision

The ALJ determined that although Plaintiff had been diagnosed with mild mental retardation, her condition did not meet or equal a listed impairment, specifically either Listing 12.05C or 12.05D. (Tr. at 14). The ALJ also found Plaintiff's condition had improved as of September 1, 2004, and as of that date, she had the residual functional capacity to perform simple unskilled work at all exertional levels. (Tr. 14–15). The ALJ also determined there was a significant number of jobs in the regional economy that Plaintiff could perform (Tr. 25–26), and therefore Plaintiff was no longer disabled. Plaintiff filed a request for review with the Appeals Council, which was denied, making the ALJ's decision the final decision of the Commissioner of Social Security. (Tr. 5).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

When the cessation of benefits is at issue, as here, the central question is whether the claimant's medical impairments have improved to the point where she is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1). Improvement is measured from "the most recent favorable decision" that the claimant was disabled. 20 C.F.R. § 416.994(b)(1)(i). There is no presumption of continuing disability. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 n.1 (6th Cir. 1994). Instead, the Commissioner applies the procedures that are outlined in 20 C.F.R. § 416.994 to determine whether a claimant's disability has ended and that she is now able to work.

The first part of the evaluation process focuses on medical improvement. The regulations define medical improvement as "any decrease in the medical severity of [a claimant's] impairment

which was present at the time of the most recent favorable medical decision that [a claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994(b)(1)(I). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.* A medical improvement is related to an individual's ability to work only "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities . . . ." § 416.994(b)(1)(iii); *see also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358 (6th Cir. 2001).

The second part of the evaluation process relates to the claimant's ability to engage in substantial gainful activity. Here the regulations incorporate many of the standards set forth in regulations governing initial disability determinations. *See* 20 C.F.R. § 416.994(b)(5) & (b)(7). The difference, however, is that the ultimate burden of proof lies with the Commissioner in termination proceedings. *Id.*; *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991).

### DISCUSSION

Plaintiff presents the following two arguments against the ALJ's cessation of benefits:

1. It was unreasonable for the ALJ to find Plaintiff did not meet the requirements of a listed impairment as set forth in Listings 12.05C and 12.05D; and

2. It was unreasonable for the ALJ to determine that Plaintiff's disability ceased as of September 1, 2004 because the record evidence does not demonstrate Plaintiff's medical condition has improved.

(Doc. 14, at 9). In short, Plaintiff argues it was unreasonable for the ALJ to conclude either her condition improved since initially receiving disability benefits or that she does not meet the

requirements of either Listing 12.05C[1] or 12.05D[2].

But reasonableness is not the standard by which this Court evaluates the ALJ's decision; rather, it must affirm the ALJ's decision if that decision is supported by substantial evidence, even if the evidence supports a different conclusion or this Court would have come to a different conclusion than the ALJ. *Jones*, 336 F.3d at 477. With that in mind, the Court will address each of Plaintiff's arguments in turn.

**Dr. Levanthal's Opinion**

Plaintiff insists the ALJ, as well as this Court, must accept Dr. Levanthal's opinion over those of Drs. Pawlarcyzk, Coffman, and O'Brien. However, that is giving Dr. Levanthal more credit than he is due. Dr. Levnthal's opinion no doubt supports a finding of disabled, and the ALJ acknowledged this in his opinion, stating "[i]f you accept Dr. Levanthal's findings . . . [Plaintiff] meets both [Listing 12.05C and 12.05D]". (Tr. 14). But as a consultative psychologist, rather than a treating physician, Dr. Levanthal's opinion is not necessarily entitled to controlling weight. *See Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989); 20 C.F.R. §

---

[1] To meet or equal an impairment under Listing 12.05C, a claimant must have "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function". 20 CFR Pt. 404, Subpt. P, App. 1, § 12.05C.

[2] To meet or equal an impairment under Listing 12.05D, a claimant must have a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 CFR Pt. 404, Subpt. P, App. 1, § 12.05D.

416.927(d)(2). Dr. Levanthal is a non-treating source. 20 CFR § 404.1502 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you."). The weight given to Dr. Levanthal's opinion – like those of Drs. Pawlarcyzk, Coffman, and O'Brien – is determined by using the factors listed in 20 C.F.R. § 404.927(d), including: (1) examining relationship; (2) treatment relationship – length, frequency, nature and extent; (3) supportability; (4) consistency; and (5) specialization.

The ALJ took these factors into account when evaluating the opinion evidence (Tr. 15), and clearly rejected Dr. Levanthal's opinion in favor of the opinions of the other Drs. Pawlarcyzk, Coffman, and O'Brien, all of which support a finding of not disabled. Each of those doctors refuted Plaintiff's allegations she could not read, heard voices, and could not adequately deal with people. (Tr. 171, 201, & 241). Dr. Levanthal's opinion, issued prior to the fraud investigation, also did not have the benefit of the CDIU's report highlighting inconsistencies between Plaintiff's words and actions. (*Compare* Tr. 163, *with* Tr. 77).

Plaintiff contends *Blankenship v. Bowen*, 874 F.2d 116 (6th Cir. 1989), shows the ALJ's error here. She argues the court in *Blankenship* found "the ALJ erred when disregarding findings of a one-time examining psychiatrist when there were not any other examinations conducted at the time and the examination was supported by medical findings." (Doc. 14, at 8). But as Defendant correctly points out, *Blankenship* is distinguishable from this case. In *Blankenship*, "upon review of the record", the court found "no medical evidence contradicting [the consultative psychologist's] opinion". *Blankenship*, 874 F.2d at 1121. Here, there are three opinions contradicting Dr. Levanthal's disability finding and supporting the ALJ's conclusions. While all four doctors believe

Plaintiff is mildly mentally retarded, only Dr. Levanthal believed she met the other requirements of Listings 12.05C and 12.05D. That simply will not suffice to overcome the deferential substantial evidence review. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing.").

**Medical Improvement**

Plaintiff also argues the ALJ erred in finding Plaintiff's condition has improved as of September 2004. "Medical improvement" is defined by the regulations as follows:

> Medical improvement is any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)

20 CFR § 416.994(b)(1)(i). Consistent with this regulation, the ALJ determined the "most recent favorable medical decision" demonstrating Plaintiff's disability (called the "comparison point decision" or "CPD"), was February 9, 2000. (Tr. 13). There is no disagreement about this date. The ALJ also found that between the CPD date and September 2004 (when Plaintiff's benefits were terminated), Plaintiff's condition improved.

Plaintiff originally received disability due to mental retardation and her inability to handle stress. (Tr. 37). During the review process in 2004, Plaintiff argued she was still disabled because of her mental retardation, hearing loss, and inability to be around people. (Tr. 37). Plaintiff now contends there is no record evidence supporting the ALJ's finding of medical improvement. Not so. Drs. Pawlarcyzk and Coffman both noted Plaintiff was "not significantly limited" to "moderately limited" in her ability to respond appropriately to changes in the work setting, to be aware of normal

9

hazards and take appropriate precautions, to travel in unfamiliar places and use public transportation, and to set realistic goals. (Tr. 170, 200). Both doctors also found Plaintiff did not meet the Listing 12.05D criteria. (Tr. 182, 195). Dr. O'Brien also opined that Plaintiff did not meet either the Listing 12.05C or 12.05D criteria. (Tr. 238–39, 241). And even Plaintiff's single-most severe alleged limitation – her inability to read and write – was rebutted by not only the CDIU report (Tr. 73–77), but also by Plaintiff's own testimony that she could read and write (Tr. 234). In short, there is substantial evidence supporting the ALJ's determination that Plaintiff's condition has improved to the point she is not disabled.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision terminating benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp II<br>
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).